UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

TROY SMITH

PLAINTIFF

- against -

1. BRIAN FISCHER, Comm., DOCS,

2. ANTHONY ANNUCCI; DC/C DOCS,

3. LEICEN LECLAIRE, JR. DCFO - DOCS,

4. RICHARD ROY, I.G. DOCS,

5. CHARLES KELLY, As/DSS, GMCF

6. D. LINDSTRAND, DSA, GMCF

7. JOSEPH CAREY, CAPTAIN, GMCF

8. D. BEBEE, SGT., SHU, GMCF

9. C. FRASER, SGT., GMCF

10. _____ GOODMAN, LT. GMCF

11. T. PRAY, LT. GMCF

12. _____ HAVERY, CHO GMCF

13. _____ TORREZ, CC, GMCF

14. CRAIG P. ROSATI, CO, GMCF

15. CHAD W. ST. JOHN, CO, GMCF

16. NESSMITH (TED) FISHER III, PA, GMCF

17. D. LINDERMANN, RN, GMCF

18. B. MARS, LS, GMCF

19. _____ ZARATSKI, LT. GMCF

20. ALBERT PRACK, SHU-DIR. - DOCS

DEFENDANTS

AMENDED

PLAINTIFF'S VERIFIED

CIVIL RIGHTS COMPLAINT

9:10-CV-01502 (DNH)(DEP)

U.S. DISTRICT COURT - N.D. OF N.Y.

FILED

FEB 14 2011

AT____ O'CLOCK
Lawrence K. Baerman, Clerk - Syracuse

TRIAL

BY

JURY

DEMANDED

—2—

**I. QUESTION OF JURISDICTION:**

1. This Civil Rights complaint is being commenced pursuant to title 42 U.S.C. SECTION 1983; TITLE 28 U.S.C. sections 1331, 1343 (3)(4), 2201 and TITLE 18 U.S.C. 1351 [TORTURE VICTIM PROTECTION ACT (CAT)] Seeking both compensatory and punitive damages in excess of $75,000.00

**II. QUESTION OF VENUE**

1. The Civil Rights violations occurred in the NORTHERN DISTRICT of the State of New York, comprising the counties of [ALBANY-WASHINGTON Counties], where defendant's are either employed and/or resided at time.

**III. QUESTION OF EXHAUSTION**

1. On June 22, 2010 while still at the Great Meadow Correctional Facility "GMCF" located in Washington County, Inmate

— 3 —

Grievance # GM-49990-10 was filed under "code 49" that was

prefunctory investigated and appealed to Superintendant and to CORC

who found against plaintiff on Nov. 3, 2010 [SEE PLAINTIFF EX. A]

2. On July 24, 2010, Inmate Grievance # GM 260-70-10 was filed,

appealed and on Sept. 10, 2010 CORC found against plaintiff.

(50-260-10)(870-10) [SEE: PLAINTIFF EX. B1.] ["                    "EX. B2]

3. Other inmate grievance filed, appealed unsatisfactory. Exhausting

all available remedies.

   IV  QUESTIONS OF PARTIES:

THE PLAINTIFF: TROY SMITH #02-A-6432 is an inmate under the

control and custody of defendant [BRIAN FISCHER] commissioner of

the department of correctional services "DOCS", now at Auburn

C.F.  P.O. BOX 618, 135 State Street, Auburn New York 13024.

## THE DEFENDANTS:

1. BRIAN FISCHER __, is the chief executive officer and policy-maker of

DOCS, who is charged with the care, custody and security of all comitted

to his control, who along with his deputies:

2. ANTHONY J. ANNUCCI, who is both chief counsel and Deputy Commiss-

ioner who is charged with enforcing state and federal laws, consents

decrees and DOCS rules, regulations, codes etc. as policy-maker of

DOCS, he along with commissioner's deputy for facility operations:

3. LECIEN LECLAIRE, JR.  whose duties include monitoring correctional

facilities operations, enforcing state and federal laws, etc.

4. Richard Roy, Inspector General, whose duties include investigating

assault, prosecuting offenders and enforcing state and federal laws.

5. CHARLES KELLY, Deputy Superintendant for Security at "GMCF" who

was acting Superintendant during time in question, whose duties in-

cluded over all security of "GMCF", etc.

6. D. LINDSTRAND, Deputy Superintendant for Administration, whose duties include enforcing state and federal laws, etc.

7. JOSEPH CAREY, Captian at "GMCF" whose duties included supervising all Lieutenants, enforcing State and Federal laws, etc.

8. D. BEBEE, Sergeant at "GMCF" whoes duties included supervising junior officers, enforcing state and federal laws

9. C. FRASER, Sergeant at "GMCF" who duties include supervising junior officers and enforcing state and federal laws

10. ____ GOODMAN, Lieutenant at "GMCF" whoes duties include super-vising all sergeants and enforcing state and federal laws.

11. T. PRAY, Lieutenant at "GMCF" whoes duties include supervising all sergeants and enforcing all laws

12. ____ HARVEY, Commissioner's hearing officer "CHO" whoes duties

- 6 -

include conducting tier III Superintendant hearings and enforcing all

state and federal laws

13.    TORRES, is a counselor at "GMCF" whose duties include assist-

ing inmates in preparing defense against Tier III charges etc. as well as

enforcing the laws of both states and federal.

14. CRAIG P. ROSATI, Correction officer "CO" whose duties include

enforcing state and federal laws

15. CHAD W. ST. JOHN, Correction officer "CO" whose duties include

enforcing state and federal laws.

16. NESSMITH (TED) FISHER III, Physician Assistant "PA" whose duties

include providing prompt medical care and treatment to all inmates and

to enforce state and federal laws.

17. D. LINDERMANN, Registered Nurse at "GMCF" whose duties include

providing prompt medical care and treatment and enforcing state and federal laws.

18. B. MARS, Laundry supervisor at "GMCF" whose duties include providing

clean laundry to inmates etc.

19. ZARNTSKI, Lieutant at "GMCF"

20. ALBERT PRACK, SHU Director, DOCS.

   V. VERIFIED STATEMENT OF FACTS
      I, TROY SMITH, verify under penalties of perjury that the
following statement of factual allegations are based upon personal know-
ledge and or upon information and belief known to be true and
correct this ___4___ day of ___FEBRUARY___, 2011.

CORPORAL PUNISHMENT IS ABSOLUTELY FORBIDDEN FOR ANY PURPOSE
AND UNDER ALL CIRCUMSTANCES [DOCS. Dir. 4932, Art 250.2 (c)(F)]

1. On June 18, 2010 while exercising my right to attend my Tier III

disciplinary hearing, that had been adjourned on June 17, 2010 in

order for hearing officer, defendant D. LINDSTRAND, "DSA" to consult

with Mental Health Chief in compliance with DOCS Directive 4932, CH. V

SEC. 254.6 (b) which states in part:

(b) MENTAL STATE OR INTELLECTUAL CAPACITY.

When an inmates mental state or intellectual capacity is at issue, a hearing officer shall consider evidence regarding the inmates mental condition or... At time of the incident and at the time of the hearing in accordance with this section. [id]   (PLAINTIFF'S EX. C)

2. It was known on June 17, 2010 that plaintiff's "mental state" was at issue because on June 11, 2010 Superintendant N. Bezio had modified my one year "SHU" time, rendered by defendant ____ GOODMAN (Lt) on May 28, 2010 to six months keeplock which was the principal reason or motive behind the ensuing assault and battery.

3. On June 17, 2010 as I was being escorted without restraints in contrast to being in restraints (if I was still in SHU) per defendant ____ Goodman's order/decision of one year "SHU". Upon seeing me, defendant Goodman became visibly upset seeing me out of SHU especially after he refused to consider my mental status.

4. On June 18, 2010 when defendant Chad St. John made a round on

B-2 company, he stated in a loud voice, in hearing distance of other inmates:

"So, I hear you are cool with Dep. Russel and Supt. Bezio. How did you get your SHU time modified to Keeplock?"

5. This statement, said maliciously, was intended to provoke other inmates, implying that I was a "RAT/Snitch/Informant" for staff, instigating hostility between me and other inmates.

6. Later that day defendant Craig P. ROSATI, came to my cell and in a visible way, started to berate me, ordering me out of my cell and down the company, while making disparaging remarks; clearly intended to provoke me into saying something in return.

7. As we arrived at the desk where defendant St. John was waiting, who started again with his earlier comments, along with defendant ROSATI was trying to get me to respond.

## ASSAULT AND BATTERY (8th AMENDMENT- CAT)

8. As we entered the B-2 stairway, which is known by security as an

area of assaults (camera does not show steps area), and as planned

by defendants: Rosati, and St. John, acting under Lt. Goodman's en-

couragement, assaulted me as I was going down the steps preceeding

defendant Rosati, who struck me with his closed-fist or hard object on

top of my head, causing me to fall face down to the floor below. I

then felt someone jumping on my back as I laid there almost unconscious,

docile, I was repeatedly beaten about my head, body, legs and upper rib

area with fists, and kicks. Later learning that CO Rosati was on my

back pushing my head into the floor while CO St. John kicked me.

Approximately 15 minutes later, I was taken to the hospital (GM

#49990-10 filed June 22, 2010).

## HOSPITAL COVER-UP

9. I cannot recall how, or when I arrived at the hospital, I later

-11-

learned that defendant D. Lindermann, RN had examined me, who inspite

of his lawful duty to fillout an injury report, which includes questions about

cause of my injuries, and having it signed by me, he failed to do so, and

sent me to defendant Nessmith (TED) Fisher "PA" to receive eight (8)

sutures, who also failed to execute an injury report, documentating the

reason for my injuries. Both defendant's failed to report to law enforce-

ment or their superior this crime, instead aiding in underplaying the

severity of the injuries, and continued to do so until I was transferred

to my present location amidst serious medical complaints to wit:

Severe pain to head, back, shoulder, and ribs, and including loss of

hearing and sight (partial).

Section 7 (Supervision of inmates)

7.5 Physicians, Physician Assistants, Nurse Practitioners, and
Registered Nurses will be responsible for the assessment and immediate
identification of significant signs and symptons requiring health care
interventions, in case of emergency, first aid may be administered

-12-.

pending the arrival of a physician...

10.  Despite section 7 (7.5) defendant's Lindermann and Fisher did no follow-

up inspite of inmate grievance (#GM 26070-10) filed July 24, 2010, no treatment

for the following serious medical conditions, which have become worse due to the

failure to promptly treat:

   On Sept. 12-14, 2010  X-Ray determined that chronic back pain required
   twice daily pain medication, (and shoulder).
   On Nov. 18, 2010, optician determined left eye "beyond any help..."
   On Dec. 8-9, 2010, Audiologist determined hearing damage required
   further specialist care.

   <u>OFFICIAL COVER-UP OF ASSAULT</u>

11.  On June 18, 2010 I was escorted to SHU and placed in cell F-22,

without defendant C. Fraser (Sgt.) supervisor of SHU, who was obligated

to consult 'MHU', because he had personal knowledge of mental status,

having reviewed prior modification by Supt. Bezio, yet I was placed

in a cell and denied 'MHU', and medical to hide, and cover up the assault.

He further had me placed in cell restraints, alleging I falsely assaulted

-13-

"them" (staff). Then, having no personal knowledge of the incident, he authored

a patent misbehavior report for attempted assault, etc.

<u>CONSPIRATORIAL USE OF DISCIPLINARY PROCEEDING TO DEFLECT OFFICIAL</u>
<u>MISCONDUCT</u>:

12. On June ___, 2010 defendant acting in concert decided to follow

an old pattern of using the disciplinary proceeding in a conspiracy to deflect

official misconduct of the June 18, 2010 assault and battery, by issuing a

misbehavior report and assigning it to defendant ___ Torres, as inmate

assistant, who refused to provide the requested assistance, by failing

to provide among other things, the correct date and time of the B-2

company activities etc. and assigned defendant _____ Harvey,

commissioner hearing officer "CHO", who failed to provide a timely

hearing within seven (7) days, who sought an extension on the

sixth (6th) day, which was a Thursday, claiming I was on a visit.

He allowed defendants to use this proceeding to deflect official

assault, and credit the testimony of defendant Rosati who claimed

that I was arguing with him before the incident about not providing

witnesses for a hearing that was over, and I was being escorted by

him to be sentenced to additional Keeplock time. So this testimony was

clearly tailored to justify his claim that I took my hands from my pockets and

turned to confront him on the steps, considering I was going down the steps,

and having a medically documented foot injury that makes it almost painfully

impossible to turn from that angle.

13. On June 21, 2010 as I was returning from a visit defendant Goodman

(Lt.) said to me, "That is what you get for getting my sentence modified,"

indicating that he was behind this assault and battery on my person, on

June 18, 2010.

14. There is a history with defendant Goodman (Lt.) that predates his May 28,

2010 Disciplinary disposition of one year SHU, that goes back to inmate

grievance Jan. 13, 2010 that was filed against B. Mars for violating

policy in exchanging old mattresses. She wanted me to pay for the replacement

of such, and when I refused, she filed a misbehavior report for destroying

State property, that was assigned to defendant Lt. Goodman, who threatened

to give me the maximum sentence, the 5.00$ surcharge, and the cost of

the mattress 65.00$ if I did not sign the disbursement form which he

assured me would be dismissed by IGRC in response to inmate grievance

of Jan. 13, 2010. Instead of dismissing the report, he refused to support

his promise to dismiss the disbursement form resulting in a cost of 65.00$

later returning 8.00$ once it was proved the new mattress did not

cost that much. This challenge clearly did not set well with defendant

(Lt.) Goodman, who did not like any inmate challenging his authority.

il. On May 20, 2010 when he was assigned to conduct a Tier III

disciplinary hearing, he saw this as an opportunity to teach me

- 16 -

a lesson, and despite DOCS Directive 4932, Ch. v Sec. 254.6 (b)(1)-(i-viii),

he said that he didn't care, and imposed one year SHU sanction, and once

Supt. Bezio was confronted with the same mental health facts that were

available to him at hearing, the one year was modified to six months Keep-

lock in general population in compliance with Docs agreemet in:

[ANDERSON v. GOORD, 87 CV 141 (14PC) DA v. N.Y.S.O.M.H 02 CV 4002
   (Lyach)]

12. Settled on Oct. 14 2004: prompting the enactment of DOCS Directive

4932 CH. I Sec 254.6  May 12, 2004. [On June 6, 2006 defendant

Annucci circulated to all Superintendent's (to give to all hearing officers)]

that written disposition must reflect how the hearing officer considered

the inmates mental health in determining guilt or innocence, and if

found guilty, how the hearing officer considered the inmates mental condi-

tion in assessing the penalty.

-17-

13. Defendant, Lt. Goodman failed to follow these clear directives and used

it to punish me without regard to any reasonable view of the evidence and

his sentence was modified on June 11, 2010 he decided to have defendant

Lt. Zurnitski send defendant CO Rosati to escort me, after first

having defendant CO St. John set the actions of the assault claim in

motion.

14. Both defendant's Rosati and St. John are known to assault, harass

and set-up target inmates in order to remove them from general pop-

ulation and out of the prison.

15. On Sept. 4, 2010 I wrote defendant Fischer, who delegated

to defendant LeClaire, who wrote back on Sept. 15 2010 informing

me that he referred it to defendant Albert Prack, who on Sept.

16, 2010 instead of addressing my concerns about the assault and

treatment in SHU, he gave a prevaricatory answer

16. My complaints about official torture a GMCF have worsened since my being assaulted, disabling me for life. I am blind in my left eye, and my hearing is drastically reduced. I have nightmares, insomnia, night-sweats, chronic pain in my back, headaches, and I'm fearful of my safety, and must rely on daily pain medications just to manage the increasing pain in my back.

17. Instead of defendant, Sgt. C. Fraser reporting the assault of defendant's Rosati and St. John, he, along with defendant's, Lt. T. Atay, Captain J. Carey, DSA D. Lindstrand, DSS Charles Kelly, Sgt. D. Bebee and others covered it up and used defendant's RN Lindermann, PA Fisher, CC Torres, Lt. Zarnitski in clear violation of State and Federal laws.

## VI  CAUSE OF ACTION

1. Defendant's Rosati and St. John were forbidden by state and federal law to punish plaintiff without Due Process of law (in violation of 8th

and 14th Amendments).

2. Defendant's Rosati, St.John, Fraser, Bebee, Kelly, Lindermann, Fisher, Lindstrand, Goodman, Torres and Harvey used their position to cover up the assault (in violation of 8th and 14th amendments).

3. Defendant's Lindermann and Fisher failed to provide medical care and denied follow-up care causing permanent disabilities (in violation of 8th and 14th amendments).

4. Defendant's Goodman, Rosati, and St.John retaliated for plaintiff benefitting from State Mental health policy (in violation of 1st, 8th and 14th amendments).

5. Defendant's Fraser, Rosati, St. John, Harvey, and Torres conspired to use Tier III hearing to deflect official misconduct for exercising a protected right (in violation of 1st, 8th and 14th amendments)

6. Defendant's Fischer, Annucci, Roy, LeClaire fail to enforce the policy on mental health (in violation of 14th amendment)

7. Defendant's B.Mars and Goodman violated 14th Amendment by forcing payment of $65.00 for a damaged mattress, that is not imposed on simaler situated inmates.

8. Defendant's Fischer, LeClaire and Prack failed to stop the torture in SHU (in violation of 8th amendment).

-20-.

9. Defendant's Fischer, Annucci, LeClaire, Roy, Kelly and Linstrand failed to properly train and supervise defendant's Rosati, St. John, Fraser and Bebee (in violation of 8th and 14th amendments).

## VII   PRAY FOR RELIEF

### A. Compensatory Damage:

1. Plaintiff seeks in compensatory damages against each and every defendant in his or her official and/or individual capacity a sum not to exceed:

$250.000.00 Plus 7.5% interest

### B. Punitive Damage:

1. Plaintiff seeks in punitive damages against each and every defendant collectively, a sum not to exceed

$5,000,000 Plus 7.5% interst

To deter further acts, omissions by defendant's, their agents or anyone else.

### C. Declaratory relief:

1. Plaintiff seeks declaration declaring unconstitutional the formentioned acts, and omissions.

### D. Injunctive Relief:

1. Plaintiff seeks injunctive relief enjoining defendant's from taking any retaliatory actions by them, their agents or anyone acting on their

behalf until the resolution of this action, and should anyone do so, that each act or ommission be considered a new, subsequent cause of action, and each and every violater is to be held liable for #250,000 plus 7.5% interest.

### E. OTHER RELIEF

1. Plaintiff seeks to proceed informa pauperis;

2. Plaintiff seeks U.S. Marshal service;

3. Plaintiff seeks initial discovery with answer (See initial discovery)

4. Plaintiff seeks appointment of counsel;

5. Plaintiff seeks Trial by Jury

6. Plaintiff reserves the right to amend after discovery.

WHEREFORE

It is respectfully demanded that a judgment be entered against each

and every defendant for $250,000 and collectively for $5,000,000 plus

7.5% annual interest totaling $10,000,000 and both decloratory

and injunctive reliefs and whatever else this Court deems just and

fair.

Respectfully Submitted

Dated:

TROY SMITH : Plaintiff

## VERIFICATION

I, TROY Smith, verify under penalties or perjury that I, TROY Smith am the plaintiff in every respect, and is familiar with the facts and circumstances, who has read the above allegations and find them to be true and correct to the best of my Knowledge on information and belief

TROY SMITH, Plaintiff.

02-A-6432

P.O. Box 618

135 STATE STREET

Auburn, New York 13024

Sworn to before me this
4 day of February 2011

NOTARY PUBLIC



ANTHONY SMITH
NOTARY PUBLIC STATE OF NE
CAYUGA COUNTY, LIC. #011
COMM. EXP

| | STATE OF NEW YORK DEPARTMENT OF CORRECTIONAL SERVICES | Grievance Number<br>GM-49990-10 | Desig./Code<br>I/49 | Date Filed<br>6/22/10 |
|---|---|---|---|---|
| | | Facility<br>Great Meadow Correctional Facility | | |
| **INMATE GRIEVANCE PROGRAM** | | Title of Grievance<br>Harassment | | |
| **CENTRAL OFFICE REVIEW COMMITTEE** | | Director's Signature | | Date<br>11/3/10 |

11/3/10

## GRIEVANT'S REQUEST UNANIMOUSLY DENIED

Upon full hearing of the facts and circumstances in the instant case, the action requested herein is hereby denied. CORC upholds the determination of the Superintendent for the reasons stated.

CORC notes that the facility administration has conducted a proper investigation, and that the instant complaint is the subject of a documented Use of Force. He was seen by medical staff immediately following the incident for pain in his left rib/flank area and face, red area on the left shoulder, lump on the back of his head, and a laceration on the left portion of his forehead. The laceration was sutured and no other treatment was noted. CORC also notes that Officers S.. and R... deny assaulting the grievant or using profane and racist language. CORC notes that the grievant's witnesses were interviewed, however, his allegations remain unsubstantiated.

CORC has not been presented with sufficient evidence to substantiate any malfeasance by staff.

It is noted that the grievant received a misbehavior report as a result of his interaction with the employee referenced in this complaint and CORC asserts that all of the facts and circumstances surrounding that report were reviewable both at the disciplinary proceeding and upon appeal in accordance with 7 NYCRR, Chapter V. Further, the incident was referred to the Inspector General for further investigation.

CORC notes that the grievant has been transferred.

RL/sl

---

A



| STATE OF NEW YORK | Grievance Number<br>GM-50296-10 | Desig./Code<br>I/44 | Date Filed<br>8/13/10 |
|---|---|---|---|
| DEPARTMENT OF<br>CORRECTIONAL SERVICES | Facility<br>Great Meadow Correctional Facility | | |
| | Title of Grievance<br>Grievance Improperly Dismissed | | |
| **INMATE GRIEVANCE PROGRAM**<br>**CENTRAL OFFICE REVIEW COMMITTEE** | Director's Signature  *(signature)* , Asst. | | Date<br>11/10/10 |

11/10/10

## GRIEVANT'S REQUEST UNANIMOUSLY ACCEPTED IN PART

Upon full hearing of the facts and circumstances in the instant case, the action requested herein is hereby accepted in part.

CORC notes that GM-50193-10, regarding an alleged retaliatory urinalysis test, was reopened and forwarded to the Superintendent for investigation. CORC also notes that the grievant was issued a Tier III misbehavior report on 7/16/10 for drug use.

With respect to the grievant's appeal, CORC notes that a disciplinary hearing may be appealed in accordance with 7 NYCRR, Chapter V, and that this appeal mechanism affords the opportunity to remedy any factual or procedural errors in a disciplinary report.

CORC defers to Departmental Directive #4040, INMATE GRIEVANCE PROGRAM, Section 701.3 (e) (1), which states, in part: ...An individual decision or disposition of any current or subsequent program or procedure having a written appeal mechanism which extends review to outside the facility shall be considered non-grievable. Consequently, the grievance program cannot be used as an additional or substitute appeal mechanism. Accordingly, CORC assumes no jurisdiction in this issue.

JA/

----------------------------------------------------------------------------------------------------
----------------------------------------------------------------------------------------------------

| STATE OF NEW YORK DEPARTMENT OF CORRECTIONAL SERVICES | Grievance Number GM-50207-10 | Desig./Code I/42 | Date Filed 7/25/10 |
|---|---|---|---|
| | Facility Great Meadow Correctional Facility | | |
| | Title of Grievance FOIL Request | | |
| INMATE GRIEVANCE PROGRAM CENTRAL OFFICE REVIEW COMMITTEE | Director's Signature | | Date 11/10/10 |

11/10/10

## GRIEVANT'S REQUEST UNANIMOUSLY DENIED

Upon full hearing of the facts and circumstances in the instant case, and upon recommendation of Department's Counsel, the action requested herein is hereby denied. CORC upholds the determination of the Superintendent for the reasons stated.

CORC notes that FOIL decision are not considered grievable in accordance with Directive #4040.

CORC advises the grievant to address his FOIL concerns in accordance with the appeal mechanism outlined in Directive #2010. Contrary to the grievant's assertions, CORC has not been presented with sufficient evidence to substantiate any malfeasance by staff.


RE/sl
-----------------------------------------------------------------------------------------------------------------------
-----------------------------------------------------------------------------------------------------------------------